Alexander Del Gtorno, J.
This claim, which has not been assigned, is for the permanent appropriation of 7.062 acres of claimant’s land for purposes connected with and relating to the construction or maintenance of the New York State Thruway, Catskill Section, County of Ulster, Subdivision I, pursuant to article 12-A of the Highway Law of the State of New York, and title 9 of article 2 of the Public Authorities Law, etc. The premises were designated as Map No. 151, Parcel No. 172. Title vested on February 12, 1955, by the filing of the map and description covering the premises appropriated.
The testimony herein was taken on March 12 and 13, 1958. The court viewed the property on April 11, 1958.
The claimant corporation has been for 35 years and still is in the business of growing mushrooms.
Salustiano Berzal, the head of the firm, testified that they are a large concern in that business, and that the chief ingredients for raising mushrooms are horse manure and topsoil of a special kind which has been previously additionally treated. While various types of soil or combinations thereof may be used to grow mushrooms in, the resulting mushrooms are not as good as those grown with topsoil alone, either in their size or quantity or quality.
*437 He said that the firm is always on the lookout for soil necessary and usable for the business. In the year 1948 claimant purchased a field of 80 acres for $4,000, to be used by claimant only for its top soil. He said he had personally tested that soil for two years prior thereto, had it analyzed at the University of Pennsylvania to determine if it was the proper soil having the proper ingredients to be used by his firm. The analysis was favorable, and the purchase was made.
Claimant grows about 1,250,000 pounds of mushrooms a year, and uses between 3,000 to 4,000 cubic yards of topsoil per year. The topsoil can be used only once for this purpose. Thereafter it may be used in his farm or sold at about 75 cents a cubic yard for such purpose.
He stated that so far claimant has used 35 to 40 acres of the original 80 acres for this purpose. Berzal stated that the remaining land has next to no value since it is despoiled of topsoil. With work and materials added, and over the years, that land could possibly be used for agricultural purposes. Whether the effort would be justified by the results is a matter of conjecture.
Albert Poplock, in the same business for 24 years, and also a large mushroom grower, substantiated the claimant’s statements and added that he had sold and bought such soil for his business.
It developed that the procedure to enrich the. soil (which was applied here) is as follows: The proper soil is acquired, then horse manure, lime and, when required, gypsum, are spread all over it. It is left thus until needed. In the meantime, with rain and snow, the soil is permeated with these elements and becomes enriched. When it is in this state these witnesses say the soil is worth in their market from $1.75 to $2 per cubic yard.
About one and one-half years prior to its ultimate use in mushroom flats the soil is further prepared by removing growth, plowing, fertilizing, harrowing, planting hay or wheat or barley which, when grown, are turned over to lend further enrichment to the soil. Then it is weeded over and over, and when clear, it is taken out and stored in a proper enclosure to prevent pollination of any kind. This is the procedure that takes no less than one and one-half years. When the soil is thus stored, it is bought and sold in the mushroom growing business at about $4 per cubic yard in the general vicinity.
In our case, only the first stage was reached, where the claimant places a value of $1.75 to $2 a cubic yard.
*438 The claimant also testified that he had bought six or seven smaller farms previously, which had been abandoned after the topsoil was removed as of no value to him.
The land taken was generally level, varying 4 to 5 feet in elevation in the entire 7.062 acres taken. Through its middle ran a creek from 3 or 4 feet to 10 feet wide. Along its banks there were trees; the rest was covered with brush and some small cedars. Mr. Joseph A. Cenley, an assistant land claim adjuster in the Department of Public Works, examined the parcel taken as well as the balance of the acreage in August, 1954. He described what he saw: 5% acres overgrown brush from 5 to 7 feet high, some smaller trees here and there and larger trees from 12 to 16 inches thick along the creek, some as much as 25 feet from the bank of the creek.
The claimant asserts that the soil in the acreage taken was about 10 to 12 inches thick and that it yielded between 1,200 to 1,500 cubic yards of topsoil per acre.
Mr. Edward E. Newhard, a landscape architect connected with the Department of Public Works, with degrees in geology, agronomy and chemistry, who made studies of the soil in the subject parcel in April, 1956, took five soil samples at various locations. He stated the so-called topsoil was from 8 to 10 inches thick. He stated this soil is known as Hudson silt loam and its particular designation was “imperfectly drained phase ” which occurs in a surface which is nearly flat or which area is slightly depressed. He said this type of soil and characterization is common in the Hudson Valley in Ulster County. However, when asked specifically whether, if he were told that this had certain qualities that met the needs of a mushroom grower, he would take issue with that, he answered that he would not question the statement or quarrel with it. He had not tested it for those ingredients implied in the purchase by claimant for its business.
Thus, the court is faced with an issue of determining in what legal category this parcel belongs. To me, it presents a special value, irrespective of purchase price. It is the value this land has to the claimant for its special purpose and needs. It is not common agricultural acreage as asserted by the State’s real estate experts. The value to be determined here, in my opinion, is its highest market value to- the ovkner as land adaptable specially to its ultimate use of raising mushrooms.
How many cubic yards were involved 1 I will accept the State’s measurements of 8-10 inches as against the claimant’s guess of 10-12 inch thickness, resulting .in 1,000 cubic yards *439 yield per acre. However, the court must give proper consideration to the fact that there was a sizable ditch in the land and a growth of trees along the bank. In the ditch no topsoil could be found, and under and around the trees, little, if any.
Considering the brush growth, trees, large and small, to be removed therefrom, this soil, with all its special adaptability, could not, in my opinion, be sold to a willing buyer for any more than $1 a cubic yard. From my observation of exhibits and after viewing the property, I must deduct as nonadaptable the creek and the soil covered with the large trees. No testimony was offered of the extent of the two elements. I have made my own calculations by reference to the map and my viewing, and have concluded that these represent 1/9 of the average taken. Thus we conclude: 800 cubic yards per acre by 7.062 acres equals 5,650 cubic yards. We deduct 1/9 therefrom and the total is in round numbers, 5,000 cubic yards. The claimant is thus entitled to judgment in the sum of $5,000.
The motions made by the State to dismiss, upon which decision was reserved, are hereby denied.
Submit findings of fact and conclusions of law in accordance with this decision and provide for judgment in the amount indicated. Such findings and conclusions are to include a complete description of the land taken.
This is the decision of the court in accordance with section 440 of the Civil Practice Act. Let judgment be entered accordingly.